Bergan, J.
The petitioner had been provisionally employed as a payroll auditor in the State Insurance Fund. On December 3,1948, the State Civil Service Commission announced an open competitive examination for junior accounting positions. It was announced as being intended for “ Professional and Technical Assistant — Accounting Specialty ”.
The same examination was announced as including the position of junior accountant in various departments, junior auditor, tax and State expenditure examiners, and payroll auditor in the State Insurance Fund. The examination included a part devoted to general intelligence and aptitude, to which no exception is taken by petitioner.
The rest of the examination was in accounting. It did not include questions on workmen’s compensation insurance practices or classifications, the Workmen’s Compensation Manual, the underwriting rules of the board or the principles of industrial classification.
The sufficiency in the field of accounting of the accounting part of the examination is not questioned, but petitioner contends that the examination was not sufficiently directed to the special work of payroll auditor in the State Insurance Fund to be appropriate to that position. It is the relative capacity and fitness “ to discharge the duties of that service ”, which is made the statutory test by subdivision 6 of section 14 of the Civil Service Law, as the legislative implementation of the direction of section 6 of article V of the New York Constitution for appointments in the civil service according to merit and fitness, ascertained by competitive examination.
*437 The petition asks the court to order that the respondents be restrained from compiling an eligible list for this position based on the examination and that a new examination be held which “ shall be practical in its character ” and shall “ relate to those matters which will fairly test the relative capacity and fitness ” of the candidates for the position in question. The court at Special Term has dismissed the petition as insufficient on its face to entitle the petitioner to relief and from this petitioner appeals.
The respondents argue that the essential capacity for the work of payroll auditor in the State Insurance Fund rests upon a knowledge of accounting and accounting practices; that accounting is the “ basic necessary skill ” involved; that the knowledge of accounting was the appropriate test of capacity and fitness for the service which is the statutory standard, and that the knowledge of manuals and classifications used in the position was a specialized knowledge that could readily be gained by experience when the basic qualification had been ascertained.
It is argued, too, that had the detailed routine of the position been included in the examination, it would have given undue weight to the specialized experience on the job acquired by provisional appointees to the disadvantage of competing candidates of equal or better general qualification without the advantage of the provisional experience.
The argument, one way or the other, seems to us to present an administrative and not a judicial question. Even if we were strongly persuaded that the petitioner is right about what the scope and content of the examination should be, and we think it fair to say we have reservations about that, we would not be justified in interfering with an administrative determination based on a different view of what kind of examination would be better.
To reach the conclusion that the commission was wrong in framing this kind of an examination for this kind of a position in the sense in which a court could interfere, we would have to say that the decision to give this examination was arbitrary and capricious which is fairly close to saying no reasonable man would have regarded this examination as appropriate.
Of course, we cannot say that on this record, for all that is shown is a debatable field from which a good argument can be, and indeed is, made on each side. This falls short of what is needed to sustain the petition.
*438 This case is a fairly good illustration of the problem at the bottom of judicial review of administrative acts. Even if the scope of judicial power were very broad — much broader than we have yet thought admissible in this State ■— the court would exercise the power very sparingly.
This is not because of a sense of self-abnegation or undue restraint in respect of judicial power. It is because judges are not technically equipped to be administrators, and a judicially administered government would be a creaking and cumbersome affair.
Thus, it might be more desirable to have a different kind of a civil service examination here, but if the court decided to compel that result it would then be undertaking an affirmative administrative policy for which it would necessarily have to assume a concomitant responsibility which would lead to other related responsibilities which no court could discharge well.
Many claims of high virtue are made for an extension of the scope of judicial review, but there are points beyond which it cannot move efficiently. No doubt it may broaden as we gain experience in its strengths and its weaknesses or take directions not now readily foreseeable. But its general frame of power is to keep the administrator within the statute which guides him and to keep him from unreasonable excesses in the exercise of his function. The success of judicial review has rested more on the implications of its existence and availability than upon an explicit exercise of power.
The order should be affirmed, without costs.
Foster, P. J., Heeeernan, Brewster and Goon, JJ., concur.
Order affirmed, without costs.